#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LES INDUSTRIES WIPECO, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | )   Case No. 21-2289-JAR-ADM |
| BLUESTEM MANAGEMENT ADVISORS, LLC, et al., | ) ) ) ) |
| Defendants. | ) |

#### **MEMORANDUM AND ORDER**

In this commercial business dispute, the court reopened discovery for the limited purpose of allowing plaintiff Les Industries Wipeco, Inc. ("Wipeco") the opportunity to seek information about a single issue that arose from a late disclosure by defendants Bluestem Management Advisors, LLC; Bluestem Health Care, LLC; and Thomas Johnson (collectively, "Bluestem"). The case is now before the court on Bluestem's Motion for Protective Order. (ECF 117.) By way of this motion, Bluestem argues that Wipeco overstepped the bounds of the court's order and asks the court to relieve it from responding to certain interrogatories and document requests. Given the case's contentious history, it is of little surprise that Bluestem found the additional discovery Wipeco served to be objectionable. And so, as discussed further below, the motion is granted in part and denied in part.

**I.    BACKGROUND**

The facts of this case have been set out in multiple orders, including the pretrial order that is now the operable pleading in the case. (ECF 76.) Highly summarized, the case arises from contracts by which Wipeco sought to purchase disposable nitrile gloves in the midst of the COVID pandemic. In the fall of 2020, Wipeco began discussions with Bluestem about purchasing the gloves. The parties agreed on purchase terms, and from December 2020 through February 2021,

1

Wipeco wired Bluestem more than $681,000 as deposits for three separate orders of gloves. Bluestem represents that it then forwarded the deposit money to glove manufacturers to secure production of the gloves. Wipeco never received the gloves it ordered or a refund of its deposits.

The question of what became of Wipeco's deposit money has long been a subject of discovery. Throughout most of discovery, Bluestem maintained that it remitted Wipeco's deposits to a Thai glove manufacturer named Sufficiency Economy City d/b/a/ SkyMed ("SkyMed"). (ECF 82-1, at 1; ECF 82-2, at 5-6.) Bluestem stated in interrogatory answers that SkyMed's Chief Executive Officer committed fraud by accepting the deposits with no intent to deliver the gloves, stole the funds, and faced charges in Thailand for public fraud and distribution of false information. (ECF 82-2, at 4; 82-3, at 5, 7.) But days before discovery was set to close, Bluestem's sole owner, defendant Thomas Johnson, testified in his deposition that SkyMed was not the only entity to which Bluestem submitted Wipeco's deposits. (ECF 82-4, at 2, 4.) Johnson suggested that Bluestem sent some of the deposit money to "BestSafe Glove and Sunshine Garden." (*Id.* at 2.) Upon further questioning, Johnson stated that he was "not sure" if money from the deposits was sent to SkyMed or to BestSafe, but that he felt "pretty confident" it went to BestSafe. (*Id.* at 5-6, 10.) Johnson also testified that Bluestem wired some of Wipeco's deposit money to Sunshine Garden. (*Id.* at 10.) Bluestem then supplemented its interrogatory responses—after discovery closed—to identify BestSafe and Sunshine Garden as the only entities to whom it transferred Wipeco's deposits.

On January 5, 2023, Wipeco filed a Motion to Reopen Discovery, in which Wipeco asked the court to "reopen[] discovery to permit Wipeco to engage in limited and narrowly tailored discovery" into what actions Bluestem took with respect to Wipeco's deposits. (ECF 81, at 1.) On February 17, the court granted the motion, finding that Wipeco is entitled "to conduct discovery

on this narrow issue in view of Bluestem's belated change in position on this issue." (ECF 106, at 6.) The court granted Wipeco leave to serve an additional five interrogatories and five document requests, with the caveat that Wipeco was required to "narrowly tailor" its discovery to the sole topic "of what happened to its deposits." (*Id.* at 6-7.) Specifically, the court limited the discovery "to questions that arose from Johnson's deposition testimony on this topic" and "caution[ed] Wipeco that its new discovery must be narrowly tailored to the specific information about its deposits that will help with resolving the issues in this case." (*Id.* at 7.)

On March 10, Wipeco served its Third Interrogatories and Third Request for Production of Documents. (ECF 117-1, 117-2.) Bluestem contends that half of these discovery requests exceed the scope permitted by the court's February 17 order. Bluestem therefore moves the court to enter a protective order "prohibiting" these requests.¹ (ECF 117, at 3.)

## II.     LEGAL STANDARDS

The court may, for good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). The good-cause standard is "highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008). The party seeking the protective order has the burden of establishing good cause. *See Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kan., Inc.,* No. 19-4007-HLT-TJJ, 2021 WL 1635853, at *2 (D. Kan. Apr. 27, 2021); *Consumer Fin. Prot. Bureau v. Integrity Advance, LLC*, No. 21-206-DDC-TJJ, 2022 WL 2791173, at *3 (D. Kan. July 15, 2022). The court has "broad discretion . . . to decide when a

---

¹ Bluestem's motion seeks protection for all but Interrogatory No. 4, but the parties notified the court on April 24 that they have since resolved their disputes with respect to Interrogatory No. 3 and Document Request Nos. 3-5. Accordingly, Bluestem's motion is denied as moot as to those discovery requests.

3

protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

**III.   ANALYSIS**

Of the additional discovery Wipeco served on March 10, Bluestem challenges the scope of the following three interrogatories and two document requests.

<u>Interrogatory No. 1</u>

In Interrogatory No. 1, Wipeco asks: "Since March 1, 2021, have Defendants refunded, returned, or otherwise paid any money back to any customers?  If so, identify the date, amount, and customer."  Bluestem objects to this interrogatory as outside the scope of the February 17 order, arguing that "[w]hether Defendants have issued refunds to other customers is not tailored to the issue of 'what happened to [Wipeco's] deposits.'"  (ECF 117, at 3.)  Wipeco responds that Bluestem previously "confused Wipeco's orders with the orders of other customers who also lost their money," such that Bluestem may have returned Wipeco's funds to another customer.  (ECF 118, at 2-3.)

Bluestem has failed to demonstrate good cause for a protective order governing this interrogatory.  Whether Bluestem may have distributed Wipeco's deposit money to another customer directly addresses the open question of "what happened to [Wipeco's] deposits."  (ECF 106, at 6-7.)  Although Bluestem argues that refunds to other customers would have occurred under different contracts with such customers (thereby making the question irrelevant), that argument misses the mark.  Interrogatory No. 1 does not ask *why* Bluestem may have issued refunds, but instead seeks to discover if the money used to issue the refunds could have come from Wipeco's deposit money.  Bluestem is the only party that has access to the information showing where Wipeco's deposits went.  And Bluestem has not suggested that answering this interrogatory would

4

be burdensome or otherwise meets a Rule 26(c)(1) factor. Thus, Bluestem's motion is denied as to Interrogatory No. 1.

## Interrogatory No. 2

Interrogatory No. 2 asks Bluestem to "[s]tate whether Defendants contend Sunshine Garden (or any other third party) should refund, return, or otherwise pay any money back to Defendants related to Plaintiff's glove orders. If so, explain the factual basis for the contention and the amount that should be repaid." Bluestem objects to the scope of this interrogatory because it "makes no reference to Wipeco's deposits." (ECF 117.) Bluestem's objection is overruled. The interrogatory's reference to "money . . . related to Plaintiff's glove orders" very clearly *is* referencing Wipeco's deposits. As mentioned above, since Johnson's deposition late in discovery, Bluestem has taken the position that it wired at least a portion of Wipeco's deposit money to Sunshine Garden. This question fits the scope of permitted additional discovery because it arose from Johnson's disposition testimony about the deposits; and it is relevant to the issue of whether and how much deposit money Bluestem wired to Sunshine Garden (and/or any other entity) and whether the entity may or may not have returned any of Wipeco's deposit money back to Bluestem. Bluestem's motion for a protective order is denied as to Interrogatory No. 2.

## Interrogatory No. 5

Interrogatory No. 5 asks Bluestem to "[i]dentify every glove supplier Defendants used from October 1, 2020 through July 1, 2021 and the quantity of gloves purchased and received from each." Bluestem seeks protection from this interrogatory, arguing that its glove suppliers and quantity of gloves purchased and received "is not tied in any way to Wipeco's deposits." (ECF 117, at 4.) Wipeco responds that such information would "capture all possible entities who could have received any of Wipeco's money." (ECF 118, at 4.) The court agrees with Bluestem that

this interrogatory goes too far. Although, theoretically, Wipeco's argument may be true, this interrogatory is in no way "narrowly tailored to the specific information about [Wipeco's] deposits," as the court's order requires. (ECF 106, at 7.) The connection drawn by Wipeco to Bluestem's total pool of glove suppliers is simply too tenuous. Bluestem's motion for a protective order is granted as to Interrogatory No. 5.

<u>Document Request No. 1</u>

Wipeco also seeks Bluestem's financial records via document requests. Specifically, Wipeco's Document Request No. 1 seeks "Defendants' bank account statements from November 2020 to the present date" that were not already produced. Bluestem seeks protection from this request on two grounds. First, Bluestem states that Wipeco's deposits and Bluestem's subsequent transfers of the deposit funds occurred in the three-month period from December 2020 through February 2021, and the Bluestem entities already produced bank statements from June 2020 through February 2021. Thus, according to Bluestem, any bank-account statements covering dates after February 2021 are not tied to the question of what happened to Wipeco's deposits. The court disagrees. The court's February order gave Wipeco leave to serve discovery that would attempt to follow the deposit money. As mentioned above, Wipeco is hoping to discover that a third-party glove manufacturer returned all or a portion of its deposits to Bluestem. Such a return could have occurred at any time since the initial transfer of the deposits, *i.e.*, after February 2021. Thus, the court denies Bluestem's motion as it applies to the bank-account statements of any Bluestem entity. The court will limit the request, however, to bank-account statements reflecting refunds from glove manufacturers and/or payments to Johnson.

Next, Bluestem seeks protection for Johnson's personal bank-account statements. Bluestem asserts that "documents previously produced confirm that Johnson did not receive

Wipeco's deposits," so "his personal bank statements will shed no light on 'what happened to [Wipeco's] deposits.'" (ECF 117, at 5.) Bluestem argues that Johnson's privacy should be protected. Wipeco counters that Johnson admitted during deposition that he comingled Bluestem and personal funds (*see* ECF 118-2, at 5-6 (admitting transactions on his business accounts from Nike, eBay, The North Face, and Ability KC likely were personal purchases)) and has an "equity position" with glove suppliers in the sense that he has contracts in place with the suppliers (*id.* at 4). Wipeco also asserts that Johnson conducted business through a sole proprietorship called Bluestem Investments.[2] The court finds that Johnson's close connection to the Bluestem entities as their sole owner, including his occasional comingling of company and personal funds, when combined with the fact that Johnson has not demonstrated any potential "annoyance, embarrassment, oppression, or undue burden or expense" that would accompany his production of bank-account statements, warrants production. The protective order entered in this case should help ease any privacy concerns. Thus, the court also denies Bluestem's motion as it applies to Johnson's bank-account statements. The court will limit the request, however, to bank-account statements reflecting refunds from glove manufacturers and/or payments to a Bluestem entity.

Document Request No. 2

Document Request No. 2 asks Bluestem to "[p]roduce all of Defendants' financial statements and tax returns from November 2020 through the present reflecting any incoming payments of any nature or any losses attributable to any glove orders from Wipeco." Bluestem has stated that no such financial statements exist, leaving only the tax returns of Johnson and the Bluestem entities at issue. Bluestem represents that the tax returns "are prepared at an aggregate level and would not contain any details regarding specific transactions, including Wipeco's

---

[2] Bluestem Investments is not a party to this lawsuit.

7

deposits or Bluestem's disposition of those deposits." (ECF 117.) Bluestem seeks protection from this document request as beyond the scope of the court's order.

The court agrees with Bluestem that Document Request No. 2 is too broad to capture only the information put at issue by Johnson's deposition testimony. By using the word "reflecting," the request encompasses the type of aggregate-level information that Bluestem represents is on the tax returns. But such aggregate-level information sheds no light on the question of what happened to Wipeco's deposits. The court cautioned Wipeco that "its new discovery must be narrowly tailored to the specific information about its deposits that will help with resolving issues in this case." (ECF 106, at 7.) Document Request No. 2 does not help resolve any issue because the tax returns do not indicate individual transactions (either payments or losses) that could be attributable to Wipeco's deposit money. This contrasts with the bank-account statements sought in Document Request No. 1, which could provide the level of granularity necessary to trace the funds. Bluestem's motion for protective order is granted as to Document Request No. 2.

IT IS THEREFORE ORDERED that Bluestem's Motion for Protective Order (ECF 117) is granted in part and denied in part, as set forth above. To the extent the motion is denied, Bluestem is ordered to respond to the discovery requests within 14 days of this order.

Dated April 27, 2023, at Kansas City, Kansas.

                                                       s/ Angel D. Mitchell
                                                      Angel D. Mitchell
                                                      U. S. Magistrate Judge